

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-1997

# Victorelli v. Shadyside Hospital

Precedential or Non-Precedential:

Docket
96-3597

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Victorelli v. Shadyside Hospital" (1997). *1997 Decisions.* Paper 257.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/257

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 3, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3597

KATHLEEN M. VICTORELLI,

      Appellant.

v.

SHADYSIDE HOSPITAL

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 95-cv-00300)

Argued on July 23, 1997

Before: SLOVITER, Chief Judge, and ROTH, Circuit Judge,
LUDWIG, District Judge1

(Opinion filed November 3, 1997)

James W. Carroll, Jr., Esquire
 (Argued)
Tabakin, Carroll & Curtin
1430 Grant Building
Pittsburgh, PA 15219

 Attorney for Appellant

_____
1. Honorable Edmund V. Ludwig, United States District Court Judge for
the Eastern District of Pennsylvania, sitting by designation.

      David R. Johnson, Esquire (Argued)
      Thomson, Rhodes & Cowie, P.C.
      Two Chatham Center
      Suite 1010
      Pittsburgh, PA 15219-3499

       Attorney for Appellee

      Patricia A. Shiu, Esquire
      Catherine R. Albiston, Esquire
      Vicki Laden, Esquire
      The Employment Law Center

A Project of the Legal Aid Society
 of San Francisco
1663 Mission Street, Suite 400
San Francisco, CA 94103

Donna Lenhoff, Esquire
Rebecca Epstein, Esquire
Women's Legal Defense Fund
1875 Connecitcut Avenue, N.W.
Suite 710
Washington, D.C. 20009

 Attorneys for Amici Curiae-
Appellant

OPINION OF THE COURT

ROTH, Circuit Judge.

Kathleen M. Victorelli appeals an award of summary
judgment to her former employer, Shadyside Hospital
("Shadyside"), on her claim that Shadyside violated the
Family and Medical Leave Act of 1993, 29 U.S.C.S 2601
("FMLA").2 For the reasons discussed below, we will vacate

_____

2. On March 3, 1995, this case was referred by the district court to the
magistrate judge pursuant to 28 U.S.C. S 636(b)(1)(A) and (B), and Local
Rule 72.1.3. The magistrate judge filed a report and recommendation,
recommending that the defendant's motion for summary judgment be
granted and that the plaintiff's motion for partial summary judgment be
denied. On July 25, 1996, the report and recommendation was adopted
by the district court. All references herein to the district court refer
concurrently to the magistrate judge's report and recommendation and
to the district court's adoption of it.

2

the grant of summary judgment and remand this case to
the district court for further proceedings.

I.

From June 17, 1989, until August 1, 1994, Kathleen M.
Victorelli was employed as a Central Service Technician by
Shadyside Hospital in Pittsburgh, Pennsylvania. She was
terminated from her employment with Shadyside following
a request for sick leave on July 29, 1994. According to
Victorelli's deposition, on the preceding evening she
experienced stomach upset with vomiting and diarrhea. At
4:30 a.m. on the 29th, Victorelli called the hospital and left
a voice mail message informing her supervisor that she

would be unable to work because of her stomach ailment. Victorelli called again at 9:00 a.m. to inform another supervisor, Janet Lattanzio, of her inability to work that day. Lattanzio was unable to speak with Victorelli at that time and suggested she call again at approximately 1:30 p.m. In the interim, Victorelli spoke with her doctor, I.N. Adoki, M.D. Dr. Adoki's opinion was that Victorelli was suffering from a "flare-up" of her peptic ulcer disease. He recommended that she not work that day. Victorelli spoke with Lattanzio again at 1:30 p.m. and said she was having stomach discomfort because of her peptic ulcer condition. Victorelli also told Lattanzio that she was scheduled to meet with her doctor about her condition on August 2 and that she would be in to work on July 30. Lattanzio responded that they would discuss Victorelli's absence on Monday, August 1.

As a result of Victorelli's July 29 "call-off " from work, Shadyside decided to terminate her employment. Lattanzio made this decision after consultation with another hospital official on the morning of the 29th but did not communicate it to Victorelli until August 1. Victorelli did report to work as scheduled on July 30 and August 1. On August 1, Victorelli was informed that she had been terminated pursuant to the hospital's progressive disciplinary policy. Lattanzio told Victorelli that she was being discharged because of previous attendance problems and what was considered to be an abuse of sick time. Victorelli had had a history of tardiness and absences due

3

to sickness, some in excess of her accrued sick time. She had been warned about this on numerous occasions.

Throughout her tenure with Shadyside, Victorelli was given high marks in her job evaluations. She had also, however, received written warnings for her tardiness and absenteeism. In March of 1993, Victorelli was counseled by her supervisor regarding her absenteeism and an apparent pattern of "Monday-Friday" absences due to sickness. As part of Shadyside's progressive disciplinary program, Victorelli was given her first verbal warning regarding her attendance in April of 1993. On May 2, 1994, Victorelli received a warning for tardiness. On May 18, she was given another written warning about her absences. The May 18 warning stated that any subsequent attendance violations would result in her dismissal.

Dr. Adoki first saw Victorelli on March 16, 1988. In March of 1990, he began treating her for recurring stomach pain, diagnosed as gastritis. He saw her again on August

13, 1992, because of stomach pain and additional symptoms of nausea and vomiting. He then prescribed Zantac for her condition. She continues to take Zantac to the present day. On November 18, 1992, Dr. Adoki diagnosed peptic ulcer disease. He has treated Victorelli on June 23, 1993, August 2, 1994, May 30, 1995, and November 16, 1995, because of peptic ulcer disease problems that could not be controlled by Zantac. Dr. Adoki has also spoken with Victorelli on numerous occasions regarding her condition. He has found that Victorelli's peptic ulcer disease is incurable although it can be generally controlled by medication. He has determined that, if left untreated, Victorelli's condition would cause a period of incapacity in excess of three days. He has also found that, while treated, Victorelli's condition has occasionally prevented her from working, including on July 29, 1994.

Over the course of her employment, Victorelli has informed her employer that she suffers from peptic ulcer disease. She also has had recurring cases of sinusitus and inner ear infections. While Shadyside knew of these various medical ailments, at no time did it seek medical documentation of them. Upon request, Victorelli has, except for one occasion, provided a doctor's excuse for her

4

illnesses. In her deposition testimony, Janet Lattanzio, Victorelli's supervisor, stated that she believed Victorelli was sick when she reported in as such. Lattanzio also testified that she did not believe that Victorelli reported off sick when she was not indeed sick.3

Victorelli contends that Shadyside Hospital violated the FMLA when it terminated her employment because of her absence on July 29, 1994. The district court granted Shadyside's motion for summary judgment on the grounds that Victorelli failed to establish she had a "serious health condition" pursuant to FMLA requirements; for that reason she was not protected by the FMLA during this absence.

The district court exercised jurisdiction over Victorelli's case pursuant to 29 U.S.C. S 2617 (a)(2) and 28 U.S.C. S 1331. We have jurisdiction over Victorelli's appeal pursuant to 28 U.S.C. S 1291. We exercise plenary review over a grant of summary judgment by the district court and apply the same test that the district court should have applied. A. Marzano v. Computer Science Corp. Inc., CSC, 91 F.3d 497, 501 (3d Cir. 1996) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)); Fedorczyk v. Carribbean Cruise Lines, Ltd., 82 F.3d 69, 72 (3d Cir. 1996); Healy v. Southwood Psychiatric Hosp., 78 F.3d 128,

130 (3d Cir. 1996). A district court's interpretation of a federal regulation is a question of law subject to plenary review. Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir. 1995); ADAPT v. Skinner, 881 F.2d 1184, 1191 n. 6 (3d Cir. 1989).

II.

The district court evaluated Victorelli's claims under the FMLA based upon an interim final rule, promulgated by the Department of Labor in June 1993, effective August 5, 1993, which was still in effect on July 29, 1994. The parties

_____

3. The Pennsylvania Unemployment Compensation Board of Review, which determines whether a person may receive benefits after being discharged from employment, found that Victorelli had not participated in any willful misconduct relative to her absences and had offered ample justification for her sick leave usage, and as such her benefits could not be denied. (Pennsylvania Unemployment Compensation Board of Review Ref. Decision, Oct. 5, 1994.)

do not dispute that the interim final rule applies, and we agree. The course of events and applicable facts in the instant case occurred before the final regulations were adopted and therefore we find that the interimfinal rule governs in this case. See Bauer v. Varity Dayton-Walther Corp., 1997 WL 369522, *4 (6th Cir. July 8, 1997); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 761 n. 2 (5th Cir. 1995) (finding that a dispute occurring before the release of the final regulations is governed by the interim regulations.) However, we will refer to the final rule promulgated in January 1995, effective February 6, 1995, as an aid to interpret the interim final rule. See United States Steel Corporation v. Oravetz, 686 F.2d 197, 201 (3d Cir. 1982) (finding that a claim filed before the effective date of the final rules should still be interpreted by thefinal rules to the extent it is appropriate.)

III.

Shadyside was awarded summary judgment because the district court determined that Victorelli did not suffer a "serious health condition" under the provisions of the FMLA. We begin by reviewing the protective sphere of the FMLA as applied to Victorelli to determine (1) whether Victorelli has a "serious health condition" protected by the FMLA, and (2) whether Victorelli was terminated for taking FMLA protected leave. In doing so, we will examine"serious health condition" as defined under both the controlling interim final rule and the final rule.

The FMLA was enacted to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide. 29 C.F.R. S 825.101. "Eligible" employees of a covered employer are allowed to take up to 12 weeks of leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 C.F.R. S 825.100(a). More specifically, the FMLA applies when an employee's own serious health condition makes the employee unable to perform the functions of his or her job. 29 U.S.C. S 2612(a)(1)(D). Employees who take leave pursuant to the statute are entitled to return to the same or equivalent

6

position and benefits as they had had previously. An employer who denies an employee these entitlements is in violation of the FMLA. 29 U.S.C. SS 2614(a)(1), 2615(a); 29 C.F.R. S 825.100(c).

The district court found Victorelli to be an employee otherwise "eligible" for protection under the FMLA. We agree. The district court concluded, however, that Victorelli's condition was a "minor" one, not intended to be protected by the FMLA. (R & R 10-14) After our review of the applicable provisions of the FMLA, we disagree with the district court's conclusion that as a matter of law the condition was a "minor" one.

A. "Serious Health Condition":

The interim final rule defines a "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves (1) a period of incapacity requiring inpatient care, (2) a period of incapacity of more than three calendar days, involving continuing treatment by a health care provider, or:

> (3) Continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days; or for prenatal care.

29 C.F.R. S 825.114(a). Using the interimfinal rule, the district court found subsection (3) applicable to Victorelli because she was subject to "continuing treatment" by Dr. Adoki. (R & R 10.) We agree. However, the district court then found that Victorelli could not satisfy any of the

requirements of "continuing treatment" of S 825.114(b)(1) or
(2) except under what the court considered to be "an
expansive reading of the statute." For this reason, the court
determined that Victorelli did not have a "serious health
condition."

Under the interim final rule, "continuing treatment" is
defined as:

> (b) "Continuing treatment by a health care provider"
> means one or more of the following:

7

> (1) The employee or family member in question is
> treated two or more times for the injury or illness
> by a health care provider. Normally this would
> require visits to the health care provider or to a
> nurse or physician's assistant under direct
> supervision of the health care provider.

> (2) The employee of family member is treated for
> the injury or illness two or more times by a
> provider of health care services (e.g., physical
> therapist) under orders of, or on referral by, a
> health care provider, or is treated for the injury or
> illness by a health care provider on at least one
> occasion which results in a regimen of continuing
> treatment under the supervision of the health care
> provider - for example, a course of medication or
> therapy - to resolve the health condition.

> (3) The employee or family member is under the
> continuing supervision of but, not necessarily being
> actively treated by a health care provider due to a
> serious long-term or chronic condition or disability
> which cannot be cured. Examples include persons
> with Alzheimer's, persons who have suffered a
> severe stroke, or persons in the terminal stages of
> a disease who may not be receiving active medical
> treatment.

29 C.F.R. S 825.114.

The district court reasoned that there are two plausible
readings of the term "serious health condition" under the
interim rule, one which encompasses Victorelli's condition
and one which does not. It therefore found the interim rule
ambiguous and appealed to the legislative history and the
final regulation for guidance. The district court interpreted
the final regulation and legislative history to suggest that
Victorelli's ulcer was the type of condition that Congress

intended "to be treated pursuant to an employer's sick leave policy." (R & R 13). For that reason, the court found SS (b)(1) and (b)(2) to be inapplicable. The district court concluded that it is "clear" neither the Secretary of Labor nor the Congress intended the FMLA to cover "minor ulcers" like Victorelli's.

We disagree. We conclude that the district court construed the requirements of the interim final rule too narrowly. Our construction of the interim final rule convinces us that there is a material issue as to whether Victorelli suffered from a "serious health condition." Moreover, even if we consider the provisions of thefinal regulation, we find that it neither states nor implies that Victorelli's ulcer could not meet the requirements of a "serious health condition."

1. Application of the Interim Final Rule:

Under the interim final rule, subsection (b)(1) requires that a person be treated for an illness "two or more times by a health care provider." Victorelli's condition satisfies (b)(1) because she was treated by Dr. Adoki for her ulcer two times prior to her termination, in addition to being treated several times after her termination. Alternatively, subsection (b)(2) requires that a person be treated for a condition on at least one occasion and be subject to "continuing treatment" by a health care provider thereafter. Continuing treatment includes a course of medication or therapy. Victorelli's condition satisfies (b)(2), because she was treated by Dr. Adoki on at least one occasion and subsequently received continuing treatment by medication for her condition.

We find that this construction of subsections (b)(1) and (b)(2) is neither improper nor unduly "expansive." In addition, we note that the district court at no time addressed whether subsection (b)(3) applied to Victorelli's condition.

Subsection (b)(3) requires that the employee be under the continuing supervision of, but not necessarily active treatment by, a health care provider. The facts indicate that Victorelli has been under the continuing supervision of a health care provider, Dr. Adoki, since March 16, 1988. He has seen her on numerous occasions for gastritis and for symptoms of peptic ulcer disease, and he has prescribed Zantac for her condition.

Subsection (b)(3) also requires that the health condition

be long-term, chronic or incurable. There is evidence that

Victorelli's peptic ulcer disease appears to be a long-term or chronic condition. Victorelli has suffered from this condition on a recurring basis since November 1992. Dr. Adoki has also stated that, while manageable with medication and treatment, Victorelli's condition is incurable. It should also be noted that, while Shadyside Hospital contested the status of Victorelli's condition, it did not attempt to obtain certification of her medical condition in the form of second or third opinions, as is its right under FMLA regulations. 29 C.F.R. S 825.307. Additionally, Janet Lattanzio, Victorelli's supervisor, indicated that not only did she not dispute the plaintiff's medical condition but she took no steps to find out whether Victorelli indeed had a peptic ulcer condition. In fact, at no time did Shadyside present any testimony or evidence challenging the medical adequacy of Victorelli's FMLA claim.

We believe the district court was correct in thefirst instance when it suggested that the plaintiff couldfit within the requirements of subsections (b)(1) and (b)(2) of the interim rule. We do not agree, however, that it is"clear" that such an interpretation would be an expansive reading of the regulations. In addition, there is evidence in the record to support a finding that Victorelli's condition satisfies the requirements of subsection (b)(3). As such, Victorelli has demonstrated a material issue of fact as to whether she suffered from a "serious health condition."

For the above reasons, we conclude that it was premature to award summary judgment to Shadyside on Victorelli's FMLA claim.4

_____

4. We note that courts in other circuits addressing similar FMLA claims have found questionably serious health conditions sufficient to preclude summary judgment. See Price v. City of Fort Wayne, 1997 WL 353605 (7th Cir. June 27, 1991) (finding that multiple diagnoses and examinations for ailments only temporally related to one another sufficient ground upon which to overturn summary judgment motion in order to further develop record to determine whether serious health condition existed); Rhoads v. Federal Deposit Insurance Corporation, 956 F. Supp. 1239, 1254 (D. Md. 1997) (finding that episodic periods of incapacity involving the inability to breathe freely due to asthma and concurrent migraine headaches were sufficient to preclude summary

2. "Serious Health Condition"
        as viewed by the Final Rule:

As we mentioned earlier, the district court referred to the
final rule in concluding that Victorelli did not have a
"serious health condition." The district court found that
Victorelli had a "minor ulcer," citing language in the final
rule that precludes FMLA protection to "minor ulcers." 29
C.F.R. S 825.114. While the final rule does state that
"unless complications arise" "minor ulcers" are not covered
by the FMLA, the final rule fails to indicate what
"complications" distinguish a "serious" ulcer from a "minor"
one. 60 Fed. Reg. 2180 at 2195. Nevertheless, the
requirements of the final rule are helpful to our analysis.

The final rule, like the interim rule, requires either
inpatient care or continuing treatment. 29 C.F.R. S 825.114.
We find, as did the district court, that the applicable
provision is S 825.114(b), which states:

>        (2) Continuing treatment by a health care provider. A
>        serious health condition involving continuing treatment
>        by a health care provider includes any one of the
>        following:
>
>        (i) A period of incapacity (i.e., inability to work,
>        attend school or perform other regular daily
>        activities due to the serious health condition,
>        treatment therefor, or recovery therefrom) of more
>        than three consecutive calendar days, and any
>        subsequent treatment or period of incapacity
>        relating to the same condition, that also involves:
>
>        (A) Treatment two or more times by a health care
>        provider, by a nurse or physician's assistant under

_____

judgment as to whether serious health condition existed); McClain v.
Southwest Steel Co., Inc., 940 F. Supp. 295, 298-300 (N.D. Okl. 1996)
(finding summary judgment inappropriate where plaintiff attributed
absenteeism to chronic nausea, diarrhea, vomiting, severe headaches,
dizziness and/or lightheadedness as symptoms might constitute a
serious health problem); Hendry v. GTE North, Inc., 896 F. Supp. 816,
827-28 (N.D. Ind. 1995) (finding that plaintiff's absences which were
attributed to migraine headaches raise a material issue as to whether
she had a serious health condition).

11

>        direct supervision from a health care provider, or
>        by a provider of health care services (e.g., a

physical therapist) under orders of, or on referral
by, a health care provider; or

    (B) Treatment by a health care provider on at
least one occasion which results in a regimen of
continuing treatment under the supervision of the
health care provider.

(ii) Any period of incapacity due to pregnancy, or
for prenatal care.

(iii) Any period of incapacity or treatment for such
incapacity due to a chronic serious health
condition. A chronic serious health condition is one
which:

    (A) Requires periodic visits for treatment by a
health care provider, or by a nurse or physicians
assistant under direct supervision of a health care
provider;

    (B) Continues over an extended period of time
(including recurring episodes of a single underlying
condition) and;

    (C) May cause episodic rather than a continuing
period of incapacity (e.g., asthma, diabetes,
epilepsy, etc.).

Victorelli's peptic ulcer disease does not meet the
requirements under (2)(i) or (2)(ii). There is, however,
evidence that Victorelli's peptic ulcer disease may satisfy
the test for a chronic serious health condition under (2)(iii).[5]
First, Victorelli's multiple visits to Dr. Adoki for her peptic
ulcer disease fit the language of (2)(iii)(A). Second, the three
year duration of Victorelli's condition constitutes an
extended period of time under (2)(iii)(B). Third, Victorelli's
periods of incapacity have been episodic rather than
continuous commensurate with (2)(iii)(C).[6]

_____

5. Coincidentally, subsection (2)(iii) is the corresponding provision to
section (b)(3) of the interim final rule.

6. That Victorelli's periods of incapacity have been episodic may be
attributable to her on-going course of medication.

12

After comparing the interim and the final rules, we note
that the standard for "continuing treatment" has remained
unchanged. "The regulation also retains the concept that

continuing treatment includes either two visits to a health care provider or one visit followed by continuing treatment by under the supervision of a health care provider." 60 Fed. Reg. 2180 at 2195. We also note that the regimen of continuing treatment includes the taking of prescribed medication, as Victorelli has done. Moreover, the Department of Labor, in promulgating the final rule, maintained the same standards for meeting the requirements of a long-term, chronic condition."Therefore, . . . as under the interim final rule, it is only necessary that the patient be under the supervision of a health care provider, rather than receiving active treatment." Id.

In response to the district court's reliance upon legislative history for the proposition that "minor ulcers" do not constitute a "serious health condition," we note that the non-exclusive "laundry list" of applicable "serious" conditions, compiled by Congress, was not included in the final rule because the Department of Labor determined that the existence of such a list might cause employers to make incorrect decisions in applying the FMLA. "[T]heir inclusion may lead employers to recognize only conditions on the list or to second guess whether a condition is equally `serious,' rather than apply the regulatory standard" (emphasis added). 60 Fed. Reg. 2180 at 2195. We also note that many of the conditions, which Congress had described as a "serious health condition," are conditions that, as long as they are being treated, do not impede a person's ability to work.

Therefore, from our review of the final regulations, we conclude that Congress did not intend to deny FMLA protection to an employee simply because her doctor was able to mitigate the frequency of her discomfort or incapacity. The intent of the FMLA is not simply to protect those whose condition causes continual incapacity. It is also intended to protect those who are occasionally incapacitated by an on-going medical problem.7

_____

7. The Department recognizes that certain conditions, such as asthma and diabetes, continue over an extended period of time (i.e. from several

13

We find that there is sufficient evidence in the record so that Victorelli may be able to meet the "regulatory standard." A factfinder may be able reasonably to find that Victorelli suffers from something more severe than a "minor ulcer" and as such is entitled to FMLA protection. For this reason, there is a material issue of fact whether Victorelli suffered a "serious health condition" as interpreted under

both the interim and the final rule.

B. Cause for Termination

The FMLA prohibits employers from discriminating against employees who request FMLA protected leave. 29 U.S.C. S 2615(a). Specifically, it prevents employers from denying employment to employees once they return from an FMLA leave period. Any such denial by the employer is actionable under the FMLA. Id. The record indicates that, had it not been for her July 29 absence, Victorelli would not have been terminated.

        Q. Was there no other procedure in the works, no
        other unresolved problems, nothing pending that
        would have caused her termination on August 1st,
        1994, even if she had worked her complete shift
        July 29th, 1994?

        A. Not unless something would have happened while
        she was at work.

        Q. I understand that. But assuming she worked her
        shift without incident on July 29th, 1994, and she
        did work apparently without incident on July 30th
        and half of the shift or a little more than half the

_____

months to many years) often without affecting day to day ability to work or perform other activities but may cause episodic periods of incapacity of less than three days. Although persons with such underlying conditions generally visit a health-care provider periodically, when subject to flare-up or other incapacitating episode, staying home and self-treatment are often more effective than visiting the health care provider (e.g., the asthma-sufferer who is advised to stay home and inside due to the pollen count being too high). The definition of serious health condition "in the rule has, therefore, been revised to include such conditions, even if the individual episodes of incapacity are not of more than three days duration." 60 Fed. Reg. 2180 at 2195.

14

        shift on August 1st, would you have had that
        meeting. Is there any other reason that you would
        have had the meeting at twelve o'clock and
        terminated Kathy Victorelli?

        A. No.

(Lattanzio Aff., Appendix, p. 77).

On remand, the district court must determine whether

Victorelli's ulcer disease was a "serious health condition," whether her absence on July 29 was an FMLA leave period as provided by 29 U.S.C. S 2612, and whether as a consequence her employment termination violated the FMLA.

IV.

As for Victorelli's motion for summary judgment, we agree with the district court that Victorelli has not met her burden of persuading us that she deserves to prevail as a matter of law. The material issue of fact whether her ulcer was a "serious health condition" also prevents a grant of summary judgment in her favor. We will therefore affirm the district court's denial of Victorelli's motion for partial summary judgment.

V.

Because of the disputed issue of fact concerning the seriousness of Victorelli's health condition, we conclude that the district court erred in granting summary judgment to defendant, Shadyside. We will, therefore, vacate that judgment and remand this case for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15