Koji UEMA, Plaintiff,

v.

NIPPON EXPRESS HAWAII, INC., Norrine Liem, et al., Defendants.

Civ. No. 97–00242 ACK.

United States District Court, D. Hawai'i.

Feb. 24, 1998.

2. Whether petitioner may satisfy this burden is a question left to the appellate court upon the proper pleading.

Scot S. Brower, Brower & Brower, Honolulu, HI, for Plaintiff.

John L. Knorek, Torkildson, Katz, Fonseca, Jaffe & Moore, Michael N. Tanoue, Matsumoto LaFountaine & Chow, Honolulu, HI, for Defendants.

### ORDER DENYING DEFENDANTS' SUMMARY JUDGMENT MOTION

KAY, Chief Judge.

### STATEMENT OF FACTS

Plaintiff Koji Uema ("plaintiff") was employed by defendant Nippon Express Hawaii, Inc. ("defendant" or "Nippon") from April of 1983 until his termination on June 17, 1996.

On or about April 8, 1996, plaintiff faxed an absence report and a disability certificate to Nippon. The disability certificate, authored by plaintiff's primary care physician, stated that plaintiff was suffering from chronic hepatitis and would be unable to perform his work duties from April 8, 1996 through April 30, 1996. Thereafter, plaintiff took paid medical and vacation leave.

On May 1, 1996, plaintiff faxed a second absence report and disability certificate to Nippon. The second disability certificate was authored by plaintiff's referral physician, George Suzuki. Dr. Suzuki's May 1, 1996 certificate stated that plaintiff was suffering from abdominal pain and intestinal bleeding and further noted that plaintiff would be unable to work from April 8, 1996 "until resolved."

On May 15, 1996, Norrine Liem ("Liem"), a secretary at Nippon, sent plaintiff a letter in response to his request for medical leave. *See* Motion for Summary Judgment ("MSJ"), ex. A. Additionally enclosed were: (1) Nippon's Family and Medical Leave Policy ("Nippon's Policy") (*see* MSJ, ex. B.); (2) an Employer Notice to Employee in Response to Request for Family and Medical Leave ("Employer Notice") (*see* MSJ, ex. C.); and (3) a blank health care provider certification form. The Employer Notice stated in boilerplate type that plaintiff was eligible for leave under the Family and Medical Leave Act ("FMLA") and further classified plaintiff's leave as "unforeseeable." *See* 29 U.S.C. §§ 2601, et seq.; 29 C.F.R. § 825. Nippon, in accordance with the FMLA, requested plaintiff to provide medical certification to validate his leave. 29 U.S.C. § 2613. However, Nippon's two references to the requested certification may be characterized, at best, as vague. Nippon first referenced the requested certification in Liem's May 15, 1996 letter which stated, in part, "[i]n order to remain eligible for these benefits you must return the certification form to me." Nippon's second (and last) reference to the certification was included in the Employer Notice, in boiler-plate print. The Employer Notice states, in relevant part,

This is to inform you that: (check appropriate boxes; explain where indicated) . . .

3. You _X_ will ___not be required to furnish medical certification of a serious condition. If required, you must furnish certification by _June 1, 1996_ (insert date must be at least 15 days after you are notified of this requirement) _or we may delay the commencement of your leave until this certification is received._

_See_ MSJ, ex. B, p. 3 (emphasis added).

Plaintiff failed to return the requested certification by the imposed June 1, 1996 deadline.[1] On June 17, 1996, Nippon terminated plaintiff. The June 17 letter stated, in relevant part, that

> [y]ou have failed to provide medical certification as requested and therefore you are hereby notified that your absence is not considered covered by the Family Medical Leave Act. As such, you have exhausted all paid leave benefits. [¶] Your continued absence can no longer be accommodated.

_See_ MSJ, ex. C. Two days later, on June 19, 1996, plaintiff's attorney wrote to Nippon seeking resolution of the matter prior to initiation of legal proceedings and enclosing the requested certification therewith.

On September 6, 1996, Nippon received a Pacific Guardian Life Insurance ("Pacific Guardian") Disability Income Report.[2] _See_ Opposition to Motion for Summary Judgment ("Opp."), ex. 5. The Disability Income Report indicates that from August 1, 1996 through August 31, 1996, Pacific Guardian paid disability benefits to plaintiff in the amount of $3,856.54. _Id._ On September 7, 1996, Nippon received a decision from the State of Hawaii Department of Labor and Industrial Relations ("DLIR"). _See_ Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), ex. B. The DLIR appeals officer concluded that: (1) plaintiff did not quit his job, but was terminated; and (2) that the termination was not premised upon employee misconduct.[3] _Id._ at p. 4. On September 12, 1996, Nippon received an Employer's Notice of Unemployment Benefits dated September 10, 1996. _See_ Opp. ex. 6. The Notice of Unemployment Benefits stated that "a monetary determination has been made for" Koji Uema and that "[i]f benefits are paid, your account will either not be charged or charged according to the code and percentage shown." _Id._ After receipt of these documents, Liem contacted a representative of Pacific Guardian and discussed, in some degree, the possible impropriety of plaintiff receiving disability and unemployment benefits at the same time.

On February, 13, 1997, plaintiff filed his complaint in the First Circuit Court of the State of Hawaii which defendants removed on March 12, 1997. Jurisdiction is proper in this Court pursuant to 26 U.S.C. § 2617(a)(2). On December 3, 1997, defendants Nippon and Liem (collectively "defendants") filed the instant summary judgment motion to which plaintiff replied on February 4, 1998. Defendants filed their reply on February 11, 1998. This matter came on for hearing on February 23, 1998.

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. _Celotex Corp. v. Catrett,_ 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. _Id._ at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it

---

1. The reason for plaintiff's failure is disputed. Plaintiff claims that his non-compliance was based in part on the unavailability of his primary care physician from May 15 through May 27, 1996 and in part upon his ignorance of the deadline's importance. Defendants, on the other hand, contend that plaintiff has admitted to simply forgetting about the deadline.

2. Pacific Life was Nippon's temporary disability insurer.

3. Under Hawaii law, an individual is eligible for unemployment compensation only when employment relationship is terminated. H.R.S. § 383–29(a). _See, e.g., Agsalud v. Blalack,_ 67 Haw. 588, 699 P.2d 17 (1985).

believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra*, 475 U.S. at 587, 106 S.Ct. 1348. Of

course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services*, 809 F.2d at 630–31.

## DISCUSSION

### I. *Family and Medical Leave Act*

#### A. *Legislative Background*

Congress passed the FMLA in 1993 to provide "job-protected, unpaid leave, or to substitute appropriate paid leave" to employees whose personal or medical predicaments necessitate leave in excess of what their employers are willing or able to provide. 29 C.F.R. § 825.100; *See, e.g., Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997). Under the FMLA an eligible employee may take up to 12 weeks of unpaid leave in any 12 month period in one of four qualifying situations: (1) the birth of a child; (2) the placement of a child with the employee for adoption or foster care; (3) to care for a spouse, child or parent of the employee who is suffering from a serious health condition, or; (4) if the employee is suffering from a serious health condition that renders him unable to perform his job. 29 U.S.C. § 2612(a); 29 C.F.R. § 825.112. Under the FMLA, any employee who takes leave under one of the stated reasons is entitled to maintain all employee benefits and, upon return from such leave, the right to be reinstated to his prior position (or an equivalent). 29 U.S.C. §§ 2612, 2614.

When an employer violates the provisions of the FMLA, the employee is entitled to recover: (1) compensatory damages equal to the amount of any wages, salary, employment benefits, or other compensation which he was denied or lost as a result of the violation; (2) interest on the compensatory damages; and, (3) unless the court concludes that the employer acted in good faith and reasonably believed that it had not violated the Act, liquidated damages equal to the sum of the amount of the compensatory damages and the interest thereon. 29 U.S.C. § 2617(a)(1).

At issue in this case is FMLA leave to accommodate an employee's chronic serious health condition.[4] As documented by various

---

4. "A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's

physicians, plaintiff suffered from chronic hepatitis and intestinal bleeding from April 8, 1996 at least until the time of his termination on June 17, 1996.[5] For purposes of this motion, defendants have not contested that plaintiff suffered from a chronic condition.[6]

### B. *Notification of Entitlement to FMLA Leave*

■ If an employee requests leave and states the reasons for such leave, the employee has satisfied his notice requirement under the FMLA. 29 C.F.R. § 825.303(b). The employee is not required to mention the FMLA by name nor refer to any legislation. Rather, in all circumstances it is the employer's duty and responsibility to classify the request for leave as FMLA-qualifying or not and to give appropriate notice thereof within two days of the request. 29 C.F.R. § 825.302(c); *See, e.g., Beal v. Rubbermaid Commercial Products, Inc.,* 972 F.Supp. 1216, 1227 (S.D.Iowa, 1997); *Viereck v. City of Gloucester City,* 961 F.Supp. 703, 707 (D.N.J.1997).

■ On April 8, 1996, plaintiff notified Nippon via an absence report and disability certificate that he was suffering from chronic hepatitis and would be unable to work until April 30, 1996. Thereafter, plaintiff took combined sick and vacation leave. On May 1, 1996, plaintiff sent Nippon a second disability certificate stating that plaintiff continued to suffer from intestinal bleeding and abdominal pain and would be unable to perform his work duties from May 1, 1996 "until resolved." Therefore, the Court finds that plaintiff gave the requisite notice of his intended leave on both April 8, 1996 and again on May 1, 1996. Nevertheless, Nippon failed to designate plaintiff's leave as FMLA eligible until May 15, 1996. As Nippon was required to designate the leave promptly after plaintiff's request, there remains an issue of fact regarding Nippon's compliance with

the FMLA. 29 C.F.R. § 825.208. Although this finding sufficiently defeats defendants' summary judgment motion regarding plaintiff's FMLA claim, the Court proceeds to analyze the remainder of the contested FMLA regulations on the merits.

### C. *Certification of Illness*

■ Once an employee has notified his employer of his need for leave, the employer has the option of requiring that the requested leave be certified by a health care provider. 29 U.S.C. § 2613(a). Under the FMLA, leave may be either foreseeable or unforeseeable. If foreseeable and the employee has provided at least 30 days notice to the employer, "the employee should provide the medical certification before the leave begins." 29 C.F.R. § 825.305(b). In all other circumstances, the employee must provide the requested certification within the time frame specified by the employer, which time frame must be at least fifteen calendar days, "unless it is not *practicable* . . . to do so despite the employee's diligent, *good faith* efforts." *Id.*

■ The regulations contain several other relevant requirements related to certifications. First, the employer must generally request certification within two business days of commenced leave. *Id.* Second, "[a]t the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." *Id.* at 825.305(c). And third, an employee's failure to provide requested certification in a timely manner allows the employer to deny FMLA leave. 29 C.F.R. § 825.311(b).

■ The Court finds that there remain triable issues of fact regarding three of the four aforementioned FMLA regulations con-

---

assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.114(a)(2)(iii).

**5.** In fact, the certification furnished by plaintiff's primary care physician to Nippon on June 19,

1996, states that plaintiff's chronic condition would prevent him from fulfilling his job duties until July 1, 1996.

**6.** In the context of defendants' motion, the Court construes defendants' statement regarding plaintiff's "chronic condition" as referring to a "chronic serious health condition" as defined by the FMLA. 29 C.F.R. § 825.114(a)(2)(iii).

cerning certification. First, the Court has found an issue of fact as to whether Nippon promptly designated plaintiff's leave in compliance with the FMLA. A request for certification is necessarily preceded by a designation of the leave as both FMLA eligible and foreseeable. 29 U.S.C. § 2613. Therefore, it logically follows that there remains a question of fact regarding Nippon's compliance in timely requesting certification. 29 C.F.R. § 825.305(b). Second, the employer is required to advise an employee of the anticipated circumstances in failing to submit the requested certification. 29 C.F.R. § 825.305(c). Defendants contend that the vague boiler-plate statements contained in its Employer Notice adequately inform employees of potentially dire consequences. The Court disagrees. The Employer Notice provides that

*you must furnish certification by June 1, 1996* (insert date must be at least 15 days after you are notified of this requirement) *or we may delay the commencement of your leave until this certification is required.*

MSJ, ex. B (emphasis added). A reasonable person could interpret the phrase "or we may delay the commencement of your leave until this certification is required" to mean that the provision only applied to those individuals who had yet to commence their leave.[7] As Nippon designated plaintiff's FMLA leave to begin on May 15, 1996, it is reasonable for plaintiff to have interpreted this provision as inapplicable to him. Finally, in cases of unforeseeable leave an employer is permitted to request medical certification to be furnished within 15 calendar days "or as soon as reasonably possible under the particular facts and circumstances." 29 C.F.R. § 825.311(b); 29 U.S.C. § 2613. The Court is unable to determine as a matter of fact that plaintiff's delay was unreasonable and dilatory. Rather, plaintiff's primary

care physician was unavailable from May 15, 1996 through May 27, 1996, and returned upon a holiday weekend, Memorial Day. MSJ, ex. E. Whether these circumstances excuse plaintiff's failure to comply with the requested deadline should be determined by the trier of fact. Defendants' summary judgment motion as to the FMLA is, thus, DENIED.

## II. *DEFAMATION*

Plaintiff's second cause of action alleges that "on or about September 23, 1996, Defendant LIEM made false and defamatory statements regarding Plaintiff UEMA to an employee of Pacific Guardian ... including the allegation that UEMA collected unemployment benefits knowing at the same time that he was receiving disability payments, an illegal act." Complaint, ¶ 12, pp. 3–4.

In Hawaii, a plaintiff (who is a non-public figure) claiming defamation must establish four elements:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher ...; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196 (1996); *Beamer v. Nishiki,* 66 Haw. 572, 578–79, 670 P.2d 1264. (1983).

As a preliminary matter the Court must determine, as a matter of law, whether the alleged defamatory communication is entitled to a qualified privilege.[8] *Vlasaty v. Pacific Club,* 4 Haw.App. 556, 562, 670 P.2d 827, 832 (1983). A qualified privilege "arises when the author of the defamatory statement reasonably acts in the dis-

---

7. The ambiguity of the phrase is readily apparent. The Nippon employee designated to answer FMLA questions, testified at her deposition that even she did not understand the meaning of the phrase "or we may delay the commencement of your leave until this certification is required." *See* Opp., ex. 9. In fact, defendants argued at the hearing that the exact language of the Employer Notice was taken from the C.F.R. form; yet plaintiff pointed out that such form was designat-

ed for situations involving "foreseeable" leave and the C.F.R. instructed employers to otherwise adapt the form when necessary. 29 C.F.R. § 825.301(2).

8. The Court proceeds to analyze the issue of qualified privilege assuming arguendo that the statements made by defendant Liem were both false and defamatory.

charge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty." *Aku v. Lewis,* 52 Haw. 366, 371, 477 P.2d 162, 166 (1970). *See also Russell v. American Guild of Variety Artists,* 53 Haw. 456, 497 P.2d 40 (1972); *Vlasaty* at 562, 670 P.2d 827. In claiming such privilege, it is essential that the author of the defamatory matter and the recipients have a common interest and the communication is of a type reasonably deemed to protect or further that interest. *Vlasaty* at 562, 670 P.2d 827.

 In the instant case, defendant Liem received three documents in early September. The first, the Disability Income Report, certifies that plaintiff received disability benefits from Pacific Guardian in August of 1996. *See* Opp. ex. 5. The second, the DLIR appellate decision, stated that (1) plaintiff did not quit his job, but was terminated; and (2) that the termination was not premised upon employee misconduct. *See* Reply, ex. B. Finally, the Employer's Notice of Unemployment Benefits indicated that a decision was made by the Unemployment Insurance Division of the DLIR, but did not communicate the outcome thereof. After receiving these documents, defendant Liem placed a call to a Pacific Guardian representative, and purportedly stated that plaintiff had improperly received disability and unemployment benefits at the same time. The alleged defamatory statements occurred during a conversation between a Nippon employee and representatives of Pacific Guardian, Nippon's temporary disability insurer. The Court finds that there is a qualified privilege as Nippon and its insurer share a common interest, their business relationship. An employer who communicates information to its insurance carrier is acting, at the very least, to promote the private interest of the companies.

 However, a finding of a qualified privilege is insufficient to grant summary judgment. Rather, the qualified privilege is conditional and lost if it is abused. *Id.* A qualified privilege may be abused by the use of words not reasonably believed necessary to protect the particular interest for which the privilege is given. The Court finds that questions remain regarding potential abuse

of the privilege, e.g., whether plaintiff improperly collected benefits; whether defendant Liem made the statements in good faith. Abuse of the qualified privilege is a determination to be made by the trier of fact. *Calleon v. Miyagi and MTL, Inc.,* 76 Hawai'i 310, 319, 876 P.2d 1278, 1287 (1994); *Vlasaty* at 562, 670 P.2d 827. Accordingly, defendants' summary judgment motion is DENIED as to the claim for defamation.

## III. *EMOTIONAL DISTRESS*

### A. *Negligent Infliction of Emotional Distress*

At the hearing on this matter, plaintiff withdrew the claim for negligent infliction of emotional distress. The Court refrains from addressing this issue on the merits and orders this claim to be DISMISSED.

### B. *Intentional Infliction of Emotional Distress*

 The elements of intentional infliction of emotional distress are: (1) the act was intentional; (2) the act was "unreasonable;" and (3) the actor should have recognized that the act was likely to result in illness. *Wong v. Panis,* 7 Haw.App. 414, 421, 772 P.2d 695 (1989); *Fraser v. Morrison,* 39 Haw. 370, 375 (1952). A plaintiff may recover for "serious mental distress" in the absence of physical injury if he can show that "a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues v. State,* 52 Haw. 156, 173, 472 P.2d 509 (1970); *Masaki v. Gen'l Motors Corp.,* 71 Haw. 1, 17, 780 P.2d 566 (1989); *Marquardt v. United Airlines, Inc.,* 781 F.Supp. 1487, 1491 (D.Haw.1992). It is for the court initially to determine whether the actions of the alleged tortfeasor were "unreasonable," although if the court finds that reasonable persons could differ on that issue, it should be left to the jury. *See Wong,* 7 Haw.App. at 421–22, 772 P.2d 695.

 With respect to the tort of intentional infliction of emotional distress, the term "unreasonable" may be equated with the phrase "without just cause or excuse and beyond all bounds of decency" and with the

word "outrageous." *See Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991, 995 (D.Haw.1988) (citing *Chedester v. Stecker,* 64 Haw. 464, 643 P.2d 532 (1982)).

> Liability [for intentional harm] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Wong,* 7 Haw.App. at 421, 772 P.2d 695 (quoting *Restatement (Second) of Torts* § 46, cmt. d (1965)).

▮ Plaintiff was a diligent employee of Nippon for approximately 13 years. This employment relationship came to a rather abrupt end after a period of illness. Despite the length of plaintiff's service, Nippon, in violation of their own employee manual, failed to give plaintiff two weeks notice of his termination. *See Kinoshita v. Canadian Pac. Airlines,* 68 Haw. 594, 724 P.2d 110 (1986). Additionally, defendant Liem told the representatives of Pacific Guardian that plaintiff has received unemployment and disability payments at the same time, an illegal act. Finally, the DLIR appeals officer concluded that plaintiff has been discharged "for reasons other than misconduct connected with work." Reply, ex. B., p. 5. Construing the facts most favorably to the plaintiff, the Court finds there are material issues of fact whether a reasonable man could suffer severe distress under these circumstances. The Court notes, however, that plaintiff has to overcome a large burden of proof to recover damages on this claim. Nevertheless, at this juncture, plaintiff has established the existence of material facts at issue, thereby precluding summary judgment.

## IV. *PUNITIVE DAMAGES*

▮ Plaintiff's complaint alleges a separate cause of action, Count IV, for punitive damages. Well settled is the notion that punitive damages does not, in and of itself, state a separate cause of action in tort, but is incidental to a separate cause of action. *Ross v. Stouffer Hotel,* 76 Hawai'i at 466, 879

P.2d 1037. Insofar as the Court has denied defendants' summary judgment motion as to the claims of defamation and intentional infliction of emotional distress, the Court construes plaintiff's fourth cause of action as an incidental request for damages. Accordingly, defendants' summary judgment motion regarding punitive damages is DENIED.

### *CONCLUSION*

For the foregoing reasons the Court DISMISSES the portion of plaintiff's complaint referring to negligent infliction of emotional distress and further DENIES the remainder of defendants' summary judgment motion.

**IT IS SO ORDERED.**