Katherine A. THORSON, Plaintiff,

v.

GEMINI, INC., Defendants.

No. C 95–2009 MJM.

United States District Court,
N.D. Iowa,
Eastern Division.

March 9, 1998.

Dale E. Putnam, Putnam & Strand, Decorah, IA, for Plaintiff.

Charles A. Blades, Blades & Carmichael, Cedar Rapids, IA, Terence M. Fruth, Mary L. Knoblauch, Fruth & Anthony PA, Minneapolis, MN, for Defendants.

## OPINION AND ORDER

MELLOY, Chief Judge.

Katherine Thorson sued her former employer, Gemini, Inc., claiming that her termination from Gemini violated the Family and Medical Leave Act.[1] After finding that

---

1. Thorson's original Complaint alleged gender discrimination, an ADA claim, and a retaliatory discharge claim, but Thorson only appealed the decision to grant summary judgment for the FMLA claim. Accordingly, the only issue before

Thorson's termination did not violate the FMLA because her illness did not appear to meet the regulatory criteria for a "serious health condition," as defined by 29 C.F.R. § 825.114, this Court granted summary judgment to Gemini.

The plaintiff then appealed this Court's summary judgment regarding the FMLA claim. After the appellate briefs were filed with the Eighth Circuit Court of Appeals, the Department of Labor issued an opinion letter discussing what constitutes a "serious illness" under section 825.114. In light of this opinion letter,[2] the Eighth Circuit believed it would be "prudent to give the parties an additional chance to argue, and the district court another chance to determine, whether Thorson's condition meets the regulatory criteria for a serious health condition." *Thorson v. Gemini*, 123 F.3d 1140, 1141 (8th Cir.1997). The Eighth Circuit thus remanded the case to this Court for further proceedings as this Court deemed necessary.

On remand, both the plaintiff and the defendant filed motions for summary judgment, and the Secretary of Labor filed a brief as amicus curiae. This Court heard oral argument on these motions and, at the conclusion of the oral argument, denied the defendant's motion for summary judgment but reserved ruling on the plaintiff's motion. The Court must therefore decide whether to grant summary judgment to the plaintiff on the issue of liability.

### Discussion

The Eighth Circuit succinctly summarized the events preceding Thorson's termination as follows:

> The events leading up to Thorson's termination began on February 3, 1994, when she left work early and went to the Howard County Hospital because she was experiencing stomach problems. Dr. John LaCelle examined Thorson and believed that she was suffering from acute gastritis

and possibly a peptic ulcer. He ordered her not to return to work until February 7 and treated her with ulcer medication (Axid) and antacids. On February 7, Thorson returned to work but again felt ill and returned to Dr. LaCelle. At the conclusion of this examination, Dr. LaCelle still believed that Thorson may have been suffering from a peptic ulcer or possibly gall bladder disease, and he scheduled Thorson for an upper gastrointestinal test and a gall bladder test on February 11. Dr. LaCelle ordered Thorson not to return to work until February 14. The tests Thorson underwent on February 11 came back normal, and Thorson returned to work on February 14. Thorson worked until February 18, at which time she was fired for excessive absenteeism. On March 9, 1994, after undergoing an upper gastrointestinal endoscopy, Dr. Joan Kepros concluded that Thorson was suffering from a small hiatal hernia and mild antral gastristis and duodenitis.

123 F.3d at 1140–41.

Although Thorson did indeed miss work because of her illness, the Family Medical Leave Act (FMLA) would allow Thorson to take up to a total of 12 workweeks of leave per year if she has a "serious health condition" that renders her unable to perform the functions of her job. 29 U.S.C. § 2612(a)(1)(D)(1994); *see also Thorson*, 123 F.3d at 1141. The Department of Labor's regulations implementing the FMLA forbid an employer from counting FMLA leave time under "no-fault" attendance policies. 29 C.F.R. § 825.220(c); *Thorson*, 123 F.3d at 1141. Because Gemini considered Thorson's absences to be unexcused and thus outside the umbrella of the FMLA,[3] this Court must decide whether Thorson's illness qualified as a "serious health condition" so as to excuse her absences under the FMLA.

---

the Eighth Circuit on appeal—and before this Court on remand—is the FMLA claim.

**2.** The opinion letter reversed an earlier Department of Labor opinion letter, Opinion FMLA–57, Wage and Hour Manual (BNA), 00:3055 (Apr. 7, 1995), which Gemini cited in its appellate brief.

**3.** Thorson was terminated because of her absences from work, and the most recent absences prior to her termination were linked to the illness and resulting medical excuse at issue in this lawsuit.

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves...continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The Department of Labor's regulations further explain that continuing treatment by a health care provider includes a period of incapacity (i.e., inability to work) of more than three consecutive calendar days and treatment by a health care provider on two or more occasions. 29 C.F.R. § 825.114(a)(2)(i); *Thorson*, 123 F.3d at 1141.

In addition to these regulatory criteria, other provisions state that:

> Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches... etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.

29 C.F.R. § 825.114(c). In an opinion letter the Department of Labor issued after this Court granted summary judgment to Gemini, the Department of Labor further explained the following:

> Ordinarily, we anticipate that these health conditions would not meet the definition in 825.114(a)(2), as they would not be expected to last for more than three consecutive calendar days and require continuing treatment by a health care provider as defined in these regulations. If, however, any of these conditions met the regularly criteria for a serious health condition, e.g., an incapacity of more than three consecutive calendar days that also involves qualifying treatment, then the absence would be protected by the FMLA....

Opinion FMLA–86, Wage and Hour Manual (BNA), 99:3091, 99:3091–92 (Dec. 12, 1996).

In its previous opinion granting summary judgment to Gemini, this Court found that Thorson's illness was best described as an upset stomach and a minor ulcer. Because such conditions are explicitly listed as conditions that ordinarily do not meet the definition of a "serious health condition," this Court concluded that her conditions could not qualify as a "serious health condition"—even if they otherwise met the "continuing treatment by a health care provider" prong in 29

C.F.R. § 825.114(a)(2). Now that the Department of Labor has clarified that medical conditions which do not usually qualify as "serious" could still be protected by the FMLA if they constitute "an incapacity of more than three consecutive calendar days that also involves qualifying treatment," this Court must reevaluate whether Thorson's situation meets those criteria.

### Whether Thorson had a "Serious Health Condition"

■ The Court begins its analysis by focusing on whether Thorson's condition constituted an "incapacity of more than three consecutive calendar days that also involves qualifying treatment." *See* Opinion FMLA–86, Wage and Hour Manual (BNA), 99:3091, 99:3091–92 (Dec. 12, 1996). The Court will first examine how many consecutive days Thorson was absent. After Thorson left work on Thursday, February 3, 1994, she received doctor's orders not to return to work until Monday, February 7, 1994. She was thus absent from work for part of the day on Thursday, February 3, and all day Friday, February 4. When she came back to work on Monday, February 7, she still felt ill, so she left work again and returned to her doctor. After an examination, her doctor scheduled further tests and ordered her not to return to work until the following Monday, February 14. Thus after leaving work on Monday, February 7, Thorson missed work from Tuesday, February 8, through Friday, February 11. During those absences she underwent further testing, and on Friday, February 11, her tests results came back normal. She finally returned to work on Monday, February 14, and worked until she was fired for excessive absenteeism on Friday, February 18. *See Thorson*, 123 F.3d at 1140–41. Reviewing these facts, the Court finds that Thorson missed at least four consecutive calendar days during the week of February 7, 1994.

The Court next examines whether the treatment that Thorson received during those absences constituted "qualifying medical treatment." To this end, the evidence shows that a medical doctor examined her at least twice during the relevant time period,

that the doctor prescribed medication and ordered her not to return to work, and that she underwent further testing. The Court finds that these facts constitute the kind of "qualifying medical treatment" anticipated by the regulations, because "treatment" by a health care provider includes not only actual diagnoses, but also examinations to determine if a serious condition exists. *See* 29 C.F.R. § 825.114(b); *see also* Brief of the Secretary of Labor as Amicus Curiae, Doc. # 67, at 10. As the Secretary of Labor explained in her Amicus Curiae brief,

> It is simply unreasonable to require employers and employees to determine, at the time the absence is requested, whether a particular condition is or may be diagnosed to be sufficiently "serious" to invoke FMLA coverage.... Congress could hardly have intended to place employees at risk of losing their jobs if they must miss work for medical testing. Where an employee is absent from work for more than three consecutive days, pursuant to a doctor's orders, to allow for testing to determine the precise nature of the condition, FMLA coverage for that leave should not depend on the nature of the ultimate diagnosis.

Doc. # 67, at 11. Here, Thorson was absent from work for at least four consecutive days, pursuant to doctor's orders. During her absence, she saw a doctor at least twice, was prescribed medication, and underwent further testing. Based on these facts, Thorson's situation constituted a "serious medical condition" for purposes of the FMLA, even though her diagnosis did not ultimately turn out to be a condition that is typically considered to be "serious." [4]

Having found that Thorson had a "serious medical condition," the Court next examines whether Thorson was unable to work because of her illness.[5]

### Whether Thorson Was Unable to Work

To recover under 29 U.S.C. § 2612(a)(1)(D), an employee must establish that (1) the employee suffers from a serious health condition, and that (2) such condition renders the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). In light of these two factors, even though Thorson has established that her medical condition constituted a "serious health condition," she must still prove that the medical condition rendered her unable to perform the functions of her employment. Gemini argues that a genuine issue of material fact exists regarding Thorson's ability to work.

Gemini relies on two different kinds of evidence to assert that a reasonable juror could find that Thorson could have returned to work during the week of February 7, 1994. First, even though Thorson's doctor advised her not to return to work during the week of February 7, 1994, Gemini points to a later evaluation of Thorson's condition made during the course of this litigation by a specialist hired by the defendant, Dr. Ray F. Miller. After reviewing Thorson's medical records

---

4. Because Thorson has a "serious health condition" under both the interim final regulations and under the final regulations, this Court need not resolve whether the interim final regulations solely govern this case, or whether the final regulations may be viewed for guidance in how to interpret the interim final rules.

The Secretary of Labor argues that the interim final regulations should govern this case because Thorson's absences and termination occurred in February of 1994, which was before the date of the final regulations. *See* Doc. # 67, *citing Victorelli v. Shadyside Hospital*, 128 F.3d 184 (3d Cir.1997); *Price v. City of Fort Wayne*, 117 F.3d 1022, 1023 n. 1 (7th Cir.1997); and *Manuel v. Westlake Polymers Corp.*, 66 F.3d at 758, 761 n. 2 (5th Cir.1995). Because these interim final regulations do not state that conditions such as minor ulcers do not ordinarily rise to the level of a serious health condition, the Secretary of Labor

argues that Thorson "clearly and unambiguously had a serious health condition" under the interim final regulations. *See* Doc. # 67, at 11.

Even if this Court were look to the final regulations for guidance in how to interpret the interim final rules, Thorson would still meet the regulatory criteria: she was incapacitated for more than three consecutive days, she saw her doctor at least twice, her doctor prescribed medication, and her doctor ordered further testing.

5. Gemini also argues that this Court should not consider Thorson's summary judgment motion because it is untimely, but that argument is without merit. After this case was remanded from the Eighth Circuit Court of Appeals, the deadline for submission of motions for summary judgment in this Court was no later than November 5, 1997, and Thorson met that deadline.

and conducting an examination,[6] Dr. Miller concluded that there was not any "obvious indication as to why [Thorson's condition] would require Thorson to miss work." (Doc. # 66, Exhibit E.) Gemini also relies on a psychological evaluation performed on the plaintiff nearly two years after the incident at issue, which asserts that Thorson has had a history of depression which mainly results in physical manifestations, and that consequently, Thorson reported a variety of major medical problems which ultimately turned out not to be serious.[7] *See* Cerhan's Psychological Evaluation, Doc. # 66, Exhibit F. Gemini then uses this evidence to argue that even though Thorson's own physician advised her not to return to work, a jury could rely on after-the-fact opinions by the defendant's specialists to find that Thorson could have returned to work, despite her own doctor's orders.

■ This Court has considered this argument and discussed it with defense counsel during the hearing on this motion. Upon further review, this Court still finds such a proposition unreasonable. When a doctor advises a patient not to return to work and the patient heeds that advice, a reasonable juror could not use an after-the-fact evaluation by another doctor, conducted two years after the incident, to decide that the plaintiff should have disregarded her doctor's advice and returned to work. When a doctor tells a person to stay home from work, the employee is justified in believing that she should not return to work, even though hindsight might prove otherwise.

■ Second, Gemini argues that even though Thorson's doctor gave her a "no work" medical excuse, that evidence does not necessarily mean that Thorson was unable to work because of her illness. To support this argument, Gemini cites *Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159 (N.D.Ohio 1997) as standing for the proposition that a doctor's note stating "no work" is not necessarily enough to prove that the employee was unable to work. Contrary to the defendant's

assertion, however, *Olsen* does not stand for so sweeping a proposition.

*Olsen* was a meter reader who went to the emergency room of a local hospital complaining of back and chest pain. *Olsen*, 979 F.Supp. at 1161. His treating physician wrote him a note (1) excusing him from work the next day, a Thursday, and (2) allowing him to return to work the following day, a Friday, as long as he only performed light duty. 979 F.Supp. at 1161. Pursuant to this doctor's orders, Olsen stayed home from work on Thursday and returned to perform light work on Friday. 979 F.Supp. at 1161. He then saw his chiropractor, who issued an excuse that allowed Olsen to return to work for half days, doing light tasks. 979 F.Supp. at 1161.

The main question in *Olsen* was whether the court could consider Olsen's chiropractor's note in order to calculate the number of days Olsen was incapacitated for purposes of the FMLA: relying only on the emergency doctor's note, Olsen was incapacitated for two days, which fell short of the FMLA's three-day requirement; relying on both the emergency doctor's note and on the chiropractor's note, Olsen was incapacitated for nineteen days, which met the FMLA requirement. In deciding which to rely upon, the *Olsen* court stated that even assuming that "light duty" was the equivalent of absence from work, Olsen's chiropractor was not acting as a health care provider within the meaning of the FMLA when he issued his "light work only" excuse. 979 F.Supp. at 1165. Thus *Olsen* does *not* stand for the proposition that a "no work" doctor's excuse may not be sufficient evidence to find that a plaintiff was validly excused from work. Rather, it stands for the proposition that a "'health care provider' must determine that, in his or her professional judgment, the employee cannot work (or could not have worked) because of the illness." 979 F.Supp. at 1166.

Applying this analysis to Thorson's case, this Court finds that a health care provider

---

6. Dr. Miller stated that his medical evaluation was based on "4 hours on record review, [and] 1½ hours on history and physical examination with the patient in attendance." *See* Miller's Independent Medical Evaluation, Doc. # 66, Exhibit E.

7. As further evidence of this conclusion, Gemini asserts that Thorson once returned to work the day following an emergency trip to the hospital. (*See* Defendant Gemini's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. # 63, at 8.)

determined that, in his professional judgment, Thorson could not work because of her illness: a medical doctor examined her at least twice, prescribed medication, ordered further testing, and told her not to return to work. Because a reasonable juror could not find otherwise, Thorson has proven the second prong of her FMLA claim.

### *Conclusion*

Thorson has put forth sufficient evidence to establish both prongs of her FMLA claim: she had a serious medical condition because she was incapacitated for more than three consecutive calendar days while also receiving continuing medical treatment for her illness, and her condition rendered her unable to perform the functions of her job. *See* 29 U.S.C. § 2612(a)(1)(D). Because defendant Gemini has failed to put forward evidence which a reasonable juror could rely upon to find that a genuine issue of material fact exists for trial, summary judgment on the issue of liability shall be granted in favor of plaintiff Thorson.

It is therefore ***ORDERED,***

Thorson's motion for summary judgment on the issue of liability is granted. A further evidentiary hearing will be set by separate notice to determine damages and any other relief that may be appropriate.