# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-1656/99-2059

_____

| | | |
|---|---|---|
| Katherine A. Thorson, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Gemini, Inc., | * | |
| | * | |
| Appellant. | * | Appeals from the United States |
| ------------------------------ | * | District Court for the |
| Equal Employment Advisory Council; | * | Northern District of Iowa. |
| Society for Human Resource | * | |
| Management; National Association | * | |
| of Manufacturers, | * | |
| | * | |
| Amici on Behalf of Appellant, | * | |
| | * | |
| Secretary of Labor, | * | |
| | * | |
| Amicus on Behalf of Appellee. | * | |

_____

No. 99-1708

_____

| | | |
|---|---|---|
| Katherine A. Thorson, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |

```
                                        *
Gemini, Inc.,                           *
                                        *
            Appellee.                   *
--------------------------              *
Equal Employment Advisory Council;      *
Society for Human Resource              *
Management; National Association        *
of Manufacturers,                       *
                                        *
      Amici on Behalf of Appellee,      *
                                        *
Secretary of Labor,                     *
                                        *
      Amicus on Behalf of Appellant.    *
```

_____

Submitted: November 18, 1999
Filed:  March 3, 2000

_____

Before BOWMAN, LAY, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Gemini, Inc., appeals from the orders of the District Court granting judgment and awarding damages to Katherine A. Thorson[1] on her claim under the Family and

---

[1]Gemini states in its brief that Thorson indicated at trial a preference for the surname Rindels (she married and changed her name after suit was filed), and so Gemini used the name Rindels throughout its briefs to refer to the plaintiff (although Gemini's counsel called her "Ms. Thorson" at trial). Thorson's own brief, however, uses the name under which the case was filed (Thorson). The caption has not been changed in the District Court, to our knowledge, or in this Court. For the sake of consistency and to avoid any confusion, we will refer to the plaintiff as Thorson.

Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (1994) (FMLA or Act). Thorson cross appeals, challenging certain aspects of the damages award. We affirm.

## I.

Thorson began working in the packing and shipping department of Gemini's plant in Decorah, Iowa, in September 1986. Acceptable absenteeism at Gemini was limited to five percent of an employee's scheduled work hours in a rolling twelve-month period. The limit covered all absences (except those for scheduled vacation, holidays, or approved leaves of absence), regardless of cause and including absences for illness. Those employees with excessive absenteeism (greater than five percent) were subject to termination.

Thorson left work on Wednesday, February 2, 1994, complaining of diarrhea and stomach cramps and went to see a physician. She was absent from work on Thursday and Friday, and returned Monday, February 7, with a note from her doctor (presumably written at her February 2 visit) indicating "no work" until Monday, February 7. On Monday, she worked only a few hours before returning to the doctor with stomach pain. The doctor ordered tests for Friday, February 11, suspecting either a peptic ulcer or gallbladder disease. The test results were normal. Thorson returned to work on Monday, February 14, again with a doctor's note stating "no work" until February 14. Thorson worked that week but was terminated on February 18 for absenteeism exceeding five percent of her scheduled work hours during the previous twelve months. On March 9, another doctor determined that Thorson had a small hiatal hernia, mild antral gastritis that could be managed with antacid, and duodenitis, all stress-related.

In January 1995, Thorson filed a complaint in the District Court against Gemini alleging various violations of state and federal law, including a claim under the FMLA. Under the Act, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for any of several reasons, including "a serious health

condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); see id. § 2611(2)(A) (defining eligible employee). The employee is entitled to be restored to her job (or to an equivalent position) upon her return to work after taking FMLA leave. See id. § 2614(a). Further, the employee's FMLA absences cannot count against her under her employer's "no fault" attendance policy. See 29 C.F.R. § 825.220(c) (1999). Thorson claimed she was entitled to FMLA leave for her February 1994 absences, and therefore she should not have been terminated for excessive absenteeism.

The District Court granted summary judgment to Gemini on all counts of Thorson's complaint. As to her FMLA claim in particular, the court concluded that Thorson could not prove that the illness at issue was a "serious health condition," as she claimed. Thorson appealed, but only the adverse judgment on her FMLA claim. This Court reversed and remanded "to give the parties an additional chance to argue, and the district court another chance to determine, whether Thorson's condition meets the regulatory criteria for a serious health condition" in light of a Department of Labor (DOL) opinion letter that was released while Thorson's appeal was pending. Thorson v. Gemini, Inc., 123 F.3d 1140, 1141-42 (8th Cir. 1997).

Revisiting the issue with the benefit of the DOL opinion letter, the District Court[2] concluded that Thorson's illness in February 1994 was indeed a "serious health condition" within the meaning of the FMLA. See Thorson v. Gemini, Inc., 998 F. Supp. 1034 (N.D. Iowa 1998). The court granted summary judgment to Thorson on the issue of liability and denied Gemini's motion for summary judgment. The case then proceeded to trial before Magistrate Judge Jarvey[3] on the issue of damages. The

---

[2]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

[3]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, hearing the case with the consent of the parties pursuant to 28 U.S.C.

Magistrate Judge awarded Thorson $49,591.86 plus interest, costs, and attorney fees, but no liquidated damages.  Gemini appeals and Thorson cross appeals.

II.

In its appeal, Gemini raises issues relating both to the question of FMLA liability and to the trial on damages.  We address each in turn.

A.

Gemini contends that the District Court erred in granting summary judgment to Thorson on the question of FMLA liability because Thorson did not have a "serious health condition" within the meaning of the Act.[4]  Our review of a district court's decision to grant summary judgment is de novo, and we apply the same standard as the district court.  See Wayne v. Genesis Med. Ctr., 140 F.3d 1145, 1147 (8th Cir. 1998).  That is, we will affirm if, upon review, we agree that there are no genuine issues of material fact and that Thorson is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

We look first to the language of the statute as Congress enacted it for a definition of "serious health condition."   As relevant here, the FMLA defines the phrase as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider."  29 U.S.C. § 2611(11)(B).  It is undisputed that

_____

§ 636(c) (1994 & Supp. III 1997).  The parties waived any right they may have had to a jury trial on the issue of damages.

[4]Because we are affirming the District Court on Gemini's claim that the court erred in granting summary judgment to Thorson on the question of FMLA liability, it is not necessary for us to address separately Gemini's argument that the court should have granted Gemini's motion for summary judgment.

-5-

Thorson had an "illness" or a "physical . . . condition," so we focus our attention on what is required to prove "continuing treatment by a health care provider." To answer that question, we consult the regulations prescribed by the Secretary of Labor and the definition of "serious health condition" therein. Id. § 2654 (directing Secretary of Labor to "prescribe such regulations as are necessary to carry out" the Act). As we shall see, it was the DOL's decision that "serious health condition" should be defined by an objective test that could be applied consistently based on the facts of each case.

In June 1993, the Secretary first promulgated the interim final rule, effective August 5, 1993, also the effective date of the Act for most affected employers and employees. See The Family and Medical Leave Act of 1993, 58 Fed. Reg. 31,794 (1993) (interim final rule). The final rule appeared in the Federal Register on January 6, 1995, with an effective date of April 6, 1995.[5] See 60 Fed. Reg. 2180 (1995) (final rule); id. 16,382 (noting change in effective date and reporting corrections).

---

[5]The interim final rule, The Family and Medical Leave Act of 1993, 58 Fed. Reg. 31,812 (1993), was codified at 29 C.F.R. pt. 825. The 1993 Code of Federal Regulations (CFR) (revised as of July 1, 1993) was the first CFR in which the interim final rule appeared. It is to this 1993 edition of the CFR that we refer when discussing that rule.

The final rule, the Family and Medical Leave Act of 1993, 60 Fed. Reg. 2237 (1995), replaced the interim rule at 29 C.F.R. pt. 825. As of July 1999, the final rule had not been amended since the 1995 promulgation, so when citing the final rule we refer to the most recent volume of the CFR available for Title 29, part 825, the 1999 edition (which in fact is the 1998 revision because none of the regulations that appear in the volume were amended between July 1998 and July 1999).

We will append the dates of the CFR to our citations of the rules only when there might be some confusion as to which version we refer.

The interim final rule was the only official guidance available to Gemini (or to anyone else) at the time Thorson was terminated in February 1994. Thus, if we find the final rule in direct conflict with the interim rule, we do not see how we can give the later version of the rule retroactive effect when no retroactive intent has been expressed. Cf. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms."). On the other hand, the expanded final regulations, to the extent they merely amplify the language of the interim regulations, may provide valuable guidance to us as we apply the law to the facts here. In addition, the parties have directed our attention to the legislative history for congressional exposition on the FMLA and to DOL opinion letters for the agency's interpretation of its own regulations. It is axiomatic that neither of these resources provides controlling authority for our inquiry, but, again, they may provide helpful insight. We will explain the relative weight we give to these sources of possible clarification or explication as we consider each of them.

This is the definition of "serious health condition," as relevant to Thorson's claim, that appears in the interim final rule: "For purposes of FMLA, 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves: . . . . [a]ny period of incapacity requiring absence from work . . . of more than three calendar days, that also involves continuing treatment by . . . a health care provider." 29 C.F.R. § 825.114(a)(2); see id. § 825.800 (definitions). On its face, then, the interim final rule sets forth three objective requirements that must be met before Thorson can be deemed to have had a "serious health condition": she must have had a "period of incapacity requiring absence from work," that period must have exceeded three calendar days, and she must have had "continuing treatment by . . . a health care provider" within that period.

Before we proceed, we must clear up some confusion in this case about what are fact questions and what is to be decided by a court as a matter of law when determining whether an individual has a "serious health condition" within the meaning of the FMLA. Gemini takes seemingly inconsistent positions on this issue in its main appellant's brief. On the one hand, Gemini declares that the "district court erred in denying Gemini's motion for summary judgment because, **as a matter of law**, [Thorson's] condition was not protected by the statute." Brief of Appellant Gemini at 17 (emphasis added). On the other hand, citing Victorelli v. Shadyside Hospital, 128 F.3d 184, 190-91 (3d Cir. 1997), Gemini says, "It was **for the factfinder to decide** whether [Thorson's] condition is a serious health condition under the FMLA." Brief of Appellant Gemini at 36 (emphasis added).

Having considered the issue, we conclude that this is one of those ubiquitous mixed questions of fact and law. As we noted above, the regulations implementing the FMLA (as relevant here) set out an objective test for a FMLA "serious health condition." It is for the fact-finder to look at the record and decide if the evidence supports the elements of that test. Once the fact-finder has affirmatively found the necessary facts, the conclusion that a plaintiff had a "serious health condition" is inescapable as a matter of law. Therefore, if there are no genuine issues raised as to those facts, which are all material, then summary judgment on the question of "serious health condition" will likely be appropriate (at least if determining whether the plaintiff had a "serious health condition" will conclusively determine liability, as in this case). With this framework in mind, we consider the factors comprising the objective test and the evidence in the record of this case to determine if the District Court was correct in granting summary judgment to Thorson. We forgo our discussion of incapacity for the time being and consider first whether Thorson underwent the "continuing treatment" required for a "serious health condition." We also note that it is without dispute that Thorson's absence for her February 1994 illness exceeded three calendar days, so we will not belabor that part of the test.

"Continuing treatment," as relevant here, means that "[t]he employee . . . is treated two or more times for the injury or illness by a health care provider. Normally this would require visits to the health care provider . . . ." 29 C.F.R. § 825.114(b)(1); see id. § 825.800 (definitions). Under this definition, and given the undisputed evidence in this case, it is clear that Thorson's illness of February 1994 met the "continuing treatment" part of the definition of "serious health condition" under the FMLA interim final rule: she saw a physician on February 2 and February 7, and had tests performed on February 11, all while she was absent from work due to illness.

The final regulations expound upon and rearrange some of the language that appeared in the interim regulations, but they do not change the substance of the rule. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 162 n.6 (1st Cir. 1998) (noting agreement with Third Circuit's conclusion in Victorelli that standard for FMLA "continuing treatment" is "essentially the same" in both sets of regulations). In the final regulations, "serious health condition," as relevant to Thorson's case:

> means an illness, injury, impairment, or physical . . . condition that involves:
>  . . .
>    (2) *Continuing treatment* by a health care provider. A serious condition involving continuing treatment by a health care provider includes . . . :
>    (i) A period of *incapacity* (*i.e.*, inability to work . . . due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>    (A) Treatment two or more times by a health care provider . . . .

29 C.F.R. § 825.114(a)(2)(i)(A); see id. § 825.800 (definitions).[6] "Treatment . . . includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b); see id. § 825.800 (definitions). Reserving for the moment, as we have said, the question of Thorson's "incapacity" (which has become a part of the "continuing treatment" test in the final rule), Thorson otherwise had the requisite "continuing treatment" during her February illness under the objective standard set forth in both rules. This is essentially without dispute. Gemini nevertheless argues that, given the ultimate diagnosis of only minor ailments, Thorson did not have a FMLA-qualifying "serious health condition" – regardless of whether the illness met the objective criteria set forth in the regulations.

As Gemini notes, the final rule expands upon the interim final rule with this statement: "Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, . . . *etc*., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave." 29 C.F.R. § 825.114(c); see id. § 825.800 (definitions). Gemini would have us declare that Thorson's illness was not a "serious health condition" because an upset stomach and a minor ulcer – the final diagnosis of the February 1994 illness – are on the list of conditions that, at least ordinarily, "do not meet the definition . . . and do not qualify for FMLA leave."

On April 7, 1995, the DOL issued an opinion letter that iterated the above-quoted language from § 825.114(c) of the final rule and concluded:

> The fact that an employee is incapacitated for more than three days, has
> been treated by a health care provider on at least one occasion which has

<hr/>

[6]The only difference between the interim and the final regulations that arguably is of substance is the requirement that the statutory absence from work exceed three **consecutive** days. Again, there is no dispute that this was the case for Thorson in February 1994.

resulted in a regimen of continuing treatment prescribed by the health care provider does not convert minor illnesses such as the common cold into serious health conditions in the ordinary case (absent complications).

Op. FMLA-57 (Apr. 7, 1995).[7] But then, in an opinion letter dated over a year and a half later, the DOL referred to this sentence from the 1995 letter and said, "This statement is an incorrect construction of the regulations and must, therefore, be withdrawn." Op. FMLA-86 (Dec. 12, 1996). According to the DOL, "[c]omplications, per se, need not be present for a condition to qualify as a serious health condition if the regulatory . . . period of incapacity and 'regimen of continuing treatment by a health care provider' tests are otherwise met." Id. The letter goes on to emphasize the objective nature of the test: "The regulations reflect the view that, **ordinarily**, conditions like the common cold and flu (*etc.*) would not routinely be expected to meet the regulatory tests, *not* that such conditions could not qualify under FMLA where the tests are, in fact, met in particular cases." Id.

Thorson insists that we must apply the 1996 letter to her case. Indeed, we remanded to the District Court the first time this case was on appeal for further argument in light of that letter, which was issued while the appeal was pending. And generally we do defer to the opinions of the agency charged with promulgating rules for and enforcing congressional enactments. "Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given 'controlling weight unless it is plainly erroneous

_____

[7]The letter refers to an alternate definition of "continuing treatment" found in the regulations, besides the one supported by the facts of this case, that requires a prescribed regimen of ongoing treatment instead of treatment two or more times by a health care provider. See 29 § C.F.R. 825.114(b)(2) (1993). We will assume, as has everyone else who is on the record in this case, that the letter refers not only to the "regimen of continuing treatment" part of the regulatory test but also to the "treatment two or more times by a health care provider" part of the test.

or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quoting Udall v. Tallman, 380 U.S. 1, 16-17 (1965) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945))). Nevertheless, we are far less inclined to yield to agency opinion if the administrative agency's interpretation of a matter appears to be inconsistent, as in this case (to say nothing of the issues that would arise should we decide to regard either a 1995 opinion letter or a 1996 opinion letter as determinative of liability for an alleged 1994 violation, if such letter were in conflict with the plain language of the regulations that were in effect at the time of the purported violation). See id. at 515.

But even without deferring to the DOL's opinions (either one of them), we conclude that Thorson received "continuing treatment" under the objective standard set forth in the regulations, and thus her illness satisfied this part of the "serious health condition" test. Subjectively, it may be that Thorson's condition was not "serious" in the usual sense of the word. Nevertheless, until February 11, her physician believed Thorson could have a potentially serious condition, and it was not until March 9, after Thorson had been terminated from her job at Gemini, that a diagnosis definitively ruled out her physician's initial suspicions. Thorson was sufficiently ill to see a physician two times in a period of just a few days and that is all that the plain language of both the interim and final rules requires for "continuing treatment."

Gemini then broadens its argument to attack the regulations themselves, asserting that they are inconsistent with congressional intent. If "Congress has directly spoken to the precise question at issue," then we will not defer to the agency's interpretation to the extent that it is inconsistent with the "unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 843 (1984). On the other hand, "if the statute is silent or ambiguous," then the agency's construction of the legislation is entitled to deference, providing it "is based on a permissible construction of the statute." Id. at 843. Gemini contends that

Congress has "spoken directly" to the issue of a FMLA "serious health condition," citing this statement from the Senate Report on the bill:

> The term "serious health condition" is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days . . . .

S. Rep. No. 103-3, at 28 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 30. The Report continues with a non-exclusive list of "serious health conditions," such as heart attack, cancer, stroke, appendicitis, pneumonia, heart bypass surgery, back surgery, and pregnancy. The type of gastrointestinal distress that Thorson ultimately was determined to have is not among the examples given. On the other hand, the Senate Report noted that "[t]he definition of 'serious health condition' . . . is broad and intended to cover various types of physical and mental conditions." Id.

We do not believe this legislative history assists Gemini all that much. While Congress may have "expected" that minor illnesses "normally" would not come within the definition of "serious health condition," that does not mean such ailments can never be FMLA "serious health conditions." Further, a non-exclusive list of ailments that might qualify as "serious health conditions" that does not include Thorson's final diagnosis does not preclude FMLA leave for her absence.[8] She missed work for more

_____

[8]Incidentally, this was a list that the DOL considered making part of the final rule. In reporting the final rule, the DOL stated:

> The Department did not consider it appropriate to include in the regulation the "laundry list" of serious health conditions listed in the legislative history because their inclusion may lead employers to recognize only conditions in the list or to second-guess whether a

than a "few days" on the advice of a doctor. Thorson's treating physician originally thought she might have a peptic ulcer or gallbladder disease, conditions that could have been quite serious in any sense of the word.

But even if we thought the legislative history would be helpful to Gemini's position, we would reject the contention that it should prevent us from deferring to the DOL's interpretation of the statute as expressed in the regulations. Despite Gemini's argument to the contrary, we do not see this legislative history as Congress speaking "directly" to the question of what constitutes a "serious health condition." The Act's definition of "serious health condition," which is without question Congress speaking "directly" to the issue, is broad and does not include any examples of conditions that either do or do not qualify as FMLA "serious health conditions." See supra, at 5-6 (quoting statutory definition of "serious health condition"). There is no express statutory language that parallels the legislative history Gemini cites. In any case, the DOL's objective test for "serious health condition," which avoids the need for employers – and ultimately courts – to make subjective decisions about statutory "serious health conditions," clearly is a permissible construction of the statute. See Chevron, 467 U.S. at 843. Under the DOL's definition, it is possible that some absences for minor illnesses that Congress did not intend to be classified as "serious health conditions" may qualify for FMLA protection. But the DOL reasonably decided that such would be a legitimate trade-off for having a definition of "serious health condition" that sets out an objective test that all employers can apply uniformly. See Pauley v. Bethenergy Mines, Inc., 501 U.S. 680, 699 (1991) ("Having determined that the Secretary's position is entitled to deference, we must decide whether this position is reasonable."). It is true that honest (or less than honest) errors by health care providers and fraud or abuse by employees are potential problems, given the objective

---

condition is equally "serious", rather than apply the regulatory standard.

60 Fed. Reg. 2180, 2195 (1995).

nature of the test. Yet, as we discuss in the next part of this opinion, in further defining "serious health condition" to require an "incapacity requiring absence from work," Congress and the DOL have devised protections for the employers that choose to use them. See 29 C.F.R. § 825.114(d) (1993) ("The scope of 'serious health condition' is further clarified by the requirements of the Act that the health care provider may be required to certify . . . that 'the employee is unable to perform the functions of the position of the employee.'").

Under the regulatory test promulgated by the DOL in the interim final rule, as interpreted in light of the final rule and relevant DOL opinions, there are no genuine fact issues on the question of whether Thorson received "continuing treatment" under the FMLA for her February 1994 illness. Thus, she met this part of the test for a "serious health condition."

B.

Gemini contends that, even if Thorson met the "continuing treatment" part of the definition of "serious health condition," she has not shown that her condition resulted in an "incapacity requiring absence from work." 29 C.F.R. § 825.114(a)(2) (1993). It may well be that Thorson's illness did not actually require that she be absent from work, but because the company did not resort to the protections for employers provided by the FMLA to address just this sort of situation, there is no genuine issue of fact on this part of the "serious health condition" question.

An employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work. See id. § 825.302(c) (1993). "Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir.), cert. denied, 120 S. Ct. 588 (1999). Thorson was absent

for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work. At that point, Gemini became obligated either to count Thorson's absence as FMLA leave under the "serious health condition" provision or to follow the procedures set out in the statute and the regulations designed to prevent employee abuse of the Act. Cf. Bailey v. Amsted Indus., Inc., 172 F.3d 1041, 1046 n.6 (8th Cir. 1999) (concluding that employee's notice obligations under the FMLA were not met where employee's written medical excuses "were only given after the fact in response to disciplinary proceedings, not 'as soon as practicable' after the missed work"). That is, Gemini could have initiated the FMLA's certification process before summarily terminating Thorson. See 29 U.S.C. § 2613; 29 C.F.R. § 825.305 (1993). Had it done so, it may have been able to determine that Thorson did not have a "serious health condition" within the meaning of the FMLA.

Under the regulations,[9] an employer is permitted to require an employee who might be qualified to receive FMLA leave to provide a certification issued by the employee's health care provider, detailing such information as the diagnosis and the date and duration of the condition. See 29 C.F.R. § 825.306(a) (1993). The "certification must also include either a statement that the employee is unable to perform work of any kind, or a statement that the employee is unable to perform the essential functions of the employee's position." Id. § 825.306(b). To prevent abuse of FMLA leave, the employer may require a second opinion from a health care provider of the employer's choice and at the employer's expense. Id. § 825.307(a). In the event the first two opinions conflict, a third, binding opinion may be obtained from a health care provider agreed to by both parties, again paid for by the employer. Id. § 825.307(c). The responsibility to request FMLA certification is the employer's. Gemini never sought such certification, notwithstanding that Thorson had timely

---

[9]In the circumstances of this case, any differences between the interim and final regulations in the areas of notice and certification are not significant.

presented her employer with two notes from her physician indicating, without further explanation, that she was not to work until certain dates.

We agree with the District Court that, in these circumstances, Gemini cannot show that there is a genuine issue of fact regarding Thorson's incapacity during the February absences, although it may have been able to do so (or even to prevail on this issue) had it availed itself of the protections provided for within the FMLA. As it was, in defending against Thorson's motion for summary judgment, Gemini had to rely upon a physician's evaluation of Thorson performed many months after the termination and for purposes of this litigation, which stated that there was no obvious reason Thorson should have missed work in February 1994, and upon a psychologist's opinion, based on an evaluation made two years after Thorson's termination, that Thorson's physical problems were manifestations of a psychological problem. In the face of the contemporaneous notes from Thorson's physician indicating that she was not to work, we agree with the District Court that Gemini cannot show, with its evaluations made long after the fact, that there remains a genuine issue of material fact on the question of Thorson's capacity to perform her job.

Given the sum of our conclusions regarding the three-part definition of "serious health condition" under the FMLA, as that definition applies to the undisputed facts of this case, we conclude that the District Court was correct in granting Thorson summary judgment on the issue of FMLA liability.

C.

For its next point on appeal, Gemini contends that the Magistrate Judge erred in excluding the testimony and report of Gemini's expert Dr. Jane Cerhan, a neuropsychologist, on the question of damages. The court granted Thorson's motion in limine and excluded the evidence. We review the decision to exclude evidence for

a clear and prejudicial abuse of the trial court's discretion.  See Allen v. Entergy Corp., 193 F.3d 1010, 1015 (8th Cir. 1999).

"Gemini's position was that [Thorson's] mental condition made her unemployable, and thus evidence of her condition should have been considered when determining damages."  Brief of Appellant Gemini at 37.  Dr. Cerhan's testimony and report, presented to the Magistrate Judge in an offer of proof, made it clear that she believed Thorson to have a problem with somatization.  That is, Dr. Cerhan thought that, over the years, Thorson's mental states (e.g., depression, stress) had been converted into physical symptoms (e.g., stomach pain and other ailments).  The court granted Thorson's motion in limine because Gemini had designated the expert to testify about Thorson's alleged emotional or mental suffering, not about her alleged unemployability as a limitation on damages.  See Trial Transcript at 274.  The Magistrate Judge also indicated that he had read the report and noted the emphasis the report placed on the lack of emotional harm suffered by Thorson as a result of losing the job at Gemini.  See id.  Although the Magistrate Judge did not explicitly say as much, it appears Dr. Cerhan's testimony and report were excluded under Federal Rule of Civil Procedure 26(a)(2)(B) because she was not designated as an expert on the question of damages and because the pretrial report prepared by Dr. Cerhan did not "contain a complete statement of all opinions to be expressed."  The court said, "I do see references to somatization on the last page of her report, but the references in the report are references to the reasons why she did not believe that the Plaintiff has suffered emotional harm."  Trial Transcript at 274.  Moreover, there was a question of relevance.  The issue of emotional harm to Thorson, or the lack thereof, related to a non-FMLA claim and was out of the case long before the trial on damages.

Further, even if the evidence should have been allowed, the exclusion of Dr. Cerhan's testimony and report was not prejudicial to Gemini.  We note, as did the Magistrate Judge, that Dr. Cerhan did not suggest the conclusion for which Gemini claims it wanted the evidence admitted.  In neither her report nor her proffered

testimony did Dr. Cerhan conclude, or even imply, that Thorson's "mental condition made her unemployable." Brief of Appellant Gemini at 37. Dr. Cerhan merely stated that a somatization problem might well result in attendance issues at work. Thorson's history of excessive absenteeism before, during, and after her employment with Gemini was fully a part of the record, and the Magistrate Judge duly noted Thorson's attendance problems at Gemini and at later places of employment. See Order of Feb. 2, 1999, at 4-5. In these circumstances, we cannot say that the court "exclude[d] evidence of a critical nature, so that there is no reasonable assurance that the [fact-finder] would have reached the same conclusion had the evidence been admitted," First Sec. Bank v. Union Pac. R.R., 152 F.3d 877, 879 (8th Cir. 1998) (quoting Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987)) (alterations ours), especially where, as here, the court has assumed the role of fact-finder in a bench trial.

We hold that the Magistrate Judge did not abuse his discretion to the prejudice of Gemini in excluding Dr. Cerhan's testimony and report from the trial on damages.

## D.

Gemini's final issue on appeal, that Thorson should not collect costs and attorney fees upon a reversal on the question of liability, is obviously of no force in the face of our affirmance of the District Court's decision to grant summary judgment to Thorson on the issue of FMLA liability.

## III.

We turn now to the issues raised by Thorson in her cross-appeal, all of which relate to the Magistrate Judge's award of damages.

## A.

Thorson first claims she was entitled to an award of liquidated damages. Under the FMLA, the defendant employer "shall be liable to any eligible employee affected [by a violation of the Act] . . . [for] an additional amount as liquidated damages equal to the sum of the amount" of other damages and interest awarded pursuant to § 2617(a)(1)(A)(i) and (ii) of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). But there is an exception to this otherwise mandatory call for liquidated damages. If the employer can "prove[] to the satisfaction of the court that the" FMLA violation "was in good faith and that the employer had reasonable grounds for believing" that its behavior was not in violation of the FMLA, then the court in its discretion may decline the award of liquidated damages. Id. The court here found the necessary good faith, and opted in its discretion to deny Thorson liquidated damages. We review for an abuse of that discretion.

The Magistrate Judge concluded that Gemini acted in good faith in believing that firing Thorson was not a violation of the FMLA. As the court pointed out, the law was relatively new and had been in effect for just over six months when Gemini terminated Thorson's employment. The owner and president of Gemini (who was the final arbiter of the decision to fire Thorson) was aware of the new law and had made efforts to get a copy of the interim regulations so as to include information about the FMLA in the March 1994 revision of Gemini's employee manual. It is true that Gemini neglected to ask Thorson for certification of her "serious health condition," and that omission has proved to be a problem for Gemini on the question of FMLA liability. But it does not demonstrate that Gemini acted in bad faith in terminating an employee who had a history of excessive and disruptive absences. Moreover, when the District Court looked at the facts of this case the first time, without the benefit of the DOL's 1996 opinion letter, it granted summary judgment for Gemini on Thorson's claim. We agree that the District Court's first decision on liability is compelling evidence of Gemini's **objectively** reasonable belief, to the extent such belief may be relevant, that it was not violating the FMLA when it terminated Thorson. The Magistrate Judge did not clearly err in finding that Gemini has met its burden of proving that those who had

-20-

responsibility for Thorson's termination acted in good faith and with reasonable grounds to believe they were not violating the FMLA when they terminated Thorson. Therefore the court did not abuse its discretion in declining to award liquidated damages to Thorson.

## B.

Thorson contends that the Magistrate Judge erred because he did not include in the backpay award any amount for lost overtime wages. Thorson had worked an average of sixty-five hours of overtime in 1992 and 1993, and argues that the court should have included overtime pay for sixty-five hours per year in the award of backpay. For its part, Gemini asserts that any award of overtime backpay should be reduced by the value of the hours of work lost as a result of Thorson's absenteeism.

Thorson's contention that she would have worked overtime in each of the four-plus years between February 1994 and the time of the trial on damages in August 1998, had she remained at Gemini, is speculative, and the number of any such overtime hours is even more so. We see no error in the court's failure to award an amount for overtime backpay that would be little more than guesswork.

## C.

The focus of Thorson's challenge to the amount of frontpay awarded is a job she had with Northern Engraving in Spring Grove, Minnesota, beginning in January 1997. She worked at Northern for fourteen months and then quit because six months earlier she and her husband had moved to another town, increasing the length of her commute to Northern. She also testified that she did not like the night shift or the amount of overtime she was expected to work, and that she had found other employment. As the court noted, however, she soon left that other employment, claiming that it bothered her back, but did not reapply to Northern. The Magistrate Judge found that Thorson's pay

rate at Northern was increasing much faster than it had been at Gemini. The court decided that, within one year from the trial on damages, Thorson would have been making the same wage at Northern, had she stayed, as she was making when she left Gemini, with similar benefits. The Magistrate Judge awarded Thorson an hourly wage differential of $0.96 for one year of straight time (no overtime) as frontpay. Thorson challenges the amount on several grounds. Because frontpay is an equitable remedy, we review the court's decisions regarding such a remedy for an abuse of discretion. See Smith v. World Ins. Co., 38 F.3d 1456, 1466 (8th Cir. 1994) (ADEA case); Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 322 (8th Cir. 1993) (§ 1983 case).

Thorson insists that, as a part of the frontpay award, she is entitled to one year's overtime pay and one year's profit sharing, calculated for the year that would begin upon the end of the trial on damages. We think the overtime frontpay claim is even more speculative than the claim for overtime backpay. As for the claim for profit sharing, Thorson seeks $2114.23, an amount evidently based on the profit-sharing information available at the time of trial, or soon after, for Gemini's then most recent fiscal year (1997-98). The court awarded Thorson $8318.75 in lost profit-sharing benefits, in a category separate from either backpay or frontpay. We will assume this was for the backpay period alone (the court did not include its calculations in its order), and that no amount was included for profit-sharing "frontpay." In any event, as with the overtime issues, we conclude that the court did not abuse its discretion because it chose neither to predict that, for the year following the trial on damages, Gemini would be profitable and would continue to share profits with its employees, nor to divine the amount of profit sharing that might have been due Thorson had she still been employed at Gemini.

Thorson further claims that the pay differential for the award of frontpay should be $2.12 per hour based on the pay she received at the last job she had before trial, a one-week job she acquired through a temporary agency, and that she should receive frontpay for twelve years, until she reaches age sixty-two, instead of for one year. We

disagree. The court was fully justified in choosing a pay differential based on Thorson's job at Northern Engraving: it was a factory job like the one she had at Gemini, it was the job she held the longest between February 1994 and trial, and she left it voluntarily. Further, the Magistrate Judge's finding that Thorson's salary at Northern would have matched her predicted salary at Gemini within one year is not clearly erroneous. Thus the court's decision to award one year of frontpay at a rate of $0.96 per hour, based on factual findings that are not clearly erroneous, was not an abuse of the court's discretion.

## D.

Finally, Thorson challenges the Magistrate Judge's decision to reduce her damages for failure to mitigate. Again, we discern no clear error in the court's calculations. See Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1106 (8th Cir. 1996) (reviewing mitigation finding for clear error in ADEA case). The court reduced the award not only by the amounts she actually earned (or, in the case of unemployment compensation, collected) during the backpay period, but also because of decisions she twice made to quit employment voluntarily, when the working conditions of those positions were not unreasonable.[10] Given Thorson's post-Gemini work history (and her surprising inability to find entry-level work even in the booming economy until her unemployment insurance expired, twice), it could be argued that the Magistrate Judge

---

[10]Thorson quit a number of jobs in the period between leaving Gemini and the trial, but the Magistrate Judge reduced the backpay award for failure to mitigate on only two of the voluntary terminations. Evidently, the court found persuasive Thorson's intimations that the working conditions were unreasonable at the other jobs she quit (e.g., she did not feel she had the proper training for home health care of a young patient; inspecting raw eggs made her feel nauseated; she did not like handling cash at a convenience store at night, especially when she heard of the murder of a convenience store clerk not far away).

was generous in not reducing the backpay award further for Thorson's failure to mitigate. In any case, we see no error in the court's decision on mitigation.

## IV.

The judgment and orders of the District Court and the Magistrate Judge are affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.